The defendants demurred to the plaintiffs' bill, and the demurrer being set down for argument, the cause was sent to the Supreme Court by consent.
In 1853, William F. and John M. Jones, two of the defendants, entered in copartnership for the purpose of keeping a house of entertainment and of merchandising. During that year, the (170) plaintiffs became, severally, creditors of the firm for articles sold and delivered, and took therefor the promissory notes of the firm. In May 1854, the defendant John M. withdrew from the firm upon an agreement that the defendant William F. should retain all of the firm effects and pay all of the firm debts. In pursuance of this agreement, William F. took possession of the goods, furniture, etc., which had belonged to the late firm. In June 1854, William F. executed to the defendant, Edwin P. Jones, a deed conveying to him all his *Page 142 
property, real, personal and mixed, including that which had belonged to the late firm, in trust to sell and pay the debts of William F.: first
paying the debts which William F. had contracted individually, and then
applying the surplus, if any, to the payment of the debts which had been contracted by the late firm, William F. owning nothing except the property conveyed in the deed to Edwin, which is not sufficient to discharge both classes of debts. John M. Jones is insolvent.
The plaintiffs had each commenced actions upon their notes, but had not obtained judgments when the bill was filed. The prayer is that the fund may be applied, under the directions of this Court, so that the plaintiffs and other creditors of the firm shall be first paid out of the proceeds of the sale of such of the property as had belonged to the late firm, and that the individual creditors shall not be allowed to have the preference given to them by the deed of trust in regard to this part of the fund.
The defendants demur, and among other things insist that the plaintiffs have no equity.
In Hassell v. Griffin, ante 117 it is decided that the English doctrine,i. e. where, in consequence of the death or bankruptcy of a partner, a fund, composed of the effects of the firm and individual effects, is to be applied under the direction of a Court of Equity, the firm creditors are first to be paid out of the effects of the firm and the individual creditors out of the individual effects, the excess of either fund, if any, going in aid of the other, is so far affected by our Statute (171) making all contracts joint and several, and giving an action at law against the personal representative of a deceased joint obligor, that, in this State, individual creditors have no equity to insist that the individual effects shall be first applied to the payment of their debts. Whether the other branch of this doctrine obtains here, so as to give firm creditors an equity in regard to firm effects, is a question that we are not now called on to decide; because the doctrine, even in England, is not applicable to a case like that now under consideration.
The creditors of a firm have no lien upon the effects of a firm. If they take judgment and issue execution, they have a lien from its test, and may sell either the property of the firm or the individual property of the members, or both the firm and individual property; but until the execution issues they have no lien.
When, by reason of death or bankruptcy, the fund comes under the direction of a Court of Equity, then, according to the English doctrine, stated above, they have an equity or a quasi lien (as it is termed) which is "worked out of the equity of the partners as against each other" by substituting the firm creditors to the right of the partner *Page 143 
who has an equity to be relieved from these debts by having them paid out of the effects of the firm. If the partner has no equity, it follows that the creditors of the firm can acquire none by substitution; for theirs is but secondary and subordinate to his.
If one of the partners, as in our case, transfers all of his interest in the firm effects to the other, and is content with his personal undertaking to pay the firm debts, the retiring partner has no longer any lien in equity in regard to the effects of the late firm, and the effects, supposing the transfer to be bona fide, become the property of the other, subject to be sold by such of his creditors, without discrimination, as issue executions, and subject to be sold and transferred by him in trust for the payment of his debts according to the preference he may prescribe, in the same way as any other property he owns.
In Ex parte Ruffin, 6 Vesey, 128, the notion that what has been partnership effects shall be treated as continuing to be (172) partnership effects, so as to be subject to an equity of the firm creditors after a bona fide transfer of it by one partner to another, is repudiated and a decided opinion is expressed that, after such transfer, firm creditors have no ground whatever upon which they can set up an equity for a preference in regard to what had once been effects of the late firm. This doctrine is followed by many cases in England and in this country, and is treated of by the text writers as settled: Story on Partnership, sec. 359, 361 and notes: 2 Story Eq. sec. 1243 to 1253 and notes.
The bill is so framed as to pray for an account and distribution of the property contained in the deed of trust, according to the provisions of thedeed, in the event that the plaintiffs and the other firm creditors have not an equity to have the effects, that have belonged to the late firm,first applied to the payment of their debts. These two prayers are clearly inconsistent: by the one, the plaintiffs seek to set up an equity adverse
and against the deed of trust, on the ground that W. F. Jones had no right to make it, because of their prior equity or quasi lien; by the other they seek to set up an equity under the deed of trust. This cannot be allowed. Sometimes a plaintiff, who fails in his main or primary prayer, may set up a secondary equity under a prayer in the alternative; but this secondary relief must not be inconsistent and at variance with the grounds upon which he attempts to set up his main or primary equity; in a few words, he cannot first claim against a deed and, failing in that, fall back and set up a secondary equity under the deed.
Per curiam. *Page 144 
Bill dismissed.
Cited: Potts v. Blackwell, 56 N.C. 455; Potts v. Blackwell, 57 N.C. 68;Allen v. Grissom, 90 N.C. 94; Davis v. Smith, 113 N.C. 101; ChemicalCo. v. Walston, 187 N.C. 821.
(173)